410 S.E.2d 275

**Lucille J. D'ANNUNZIO, Plaintiff Below, Appellant**

v.

**SECURITY–CONNECTICUT LIFE INS. CO., A Connecticut Corporation, Defendant Below, Appellee.**

**No. 19942.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Oct. 16, 1991.

**40**

Roger J. Morgan and Gregory A. Morgan, Young, Morgan & Cann, Clarksburg, for appellant.

Robert G. Steele and Ronald T. Tomasko, Steptoe & Johnson, Clarksburg, for appellee.

NEELY, Justice:

Lucille J. D'Annunzio brought a declaratory judgment action in the Circuit Court of Harrison County to determine her rights under an insurance policy issued by Security–Connecticut Life Insurance Company, on the life of Samuel D'Annunzio, her late husband. The circuit court found that Mrs. D'Annunzio was entitled only to a return of premiums and the policy's cash surrender value because Mr. D'Annunzio had committed suicide within two years of the policy issue date. Mrs. D'Annunzio now appeals, claiming that the circuit court erred because the terms of the policy were ambiguous and should have been construed in her favor. We reverse and remand with directions to enter judgment for Mrs. D'Annunzio.

### I.

Sometime before 1986, Samuel D'Annunzio obtained a $300,000 life insurance policy from the Penn Insurance and Annuity Company. In October of 1986, Mr. D'Annunzio's insurance agent suggested that Mr. D'Annunzio could obtain comparable coverage from Security–Connecticut at a lower premium, and on 6 October 1986, Mr. D'Annunzio filled out and signed an application for a new policy with Security–Connecticut. Mr. D'Annunzio supplemented the application and signed the supplement on 14 November 1986. Under the terms of the application, Mr. D'Annunzio rolled over the accrued cash value of the policy with Penn Insurance ($21,044) into the new policy with Security–Connecticut. On 19 December 1986, Mr. D'Annunzio's insurance agent told him that his policy application had been approved. Security–Connecticut forwarded the new policy to Mr. D'Annunzio's insurance agent, and Mr. D'Annunzio paid his first premium with a check dated 12 January 1987.

## II.

Samuel D'Annunzio committed suicide on 4 December 1988, approximately two years after he switched his insurance coverage from Penn Insurance to Security–Connecticut. Security–Connecticut claimed that it was not required to pay Mrs. D'Annunzio the face value of the policy because Mr. D'Annunzio's suicide occurred less than two years after the "issue date" of the policy, 24 December 1986. Mrs. D'Annunzio asserted that the policy was ambiguous and that it should be construed against its drafter, Security–Connecticut.

The circuit court's opinion rested upon its interpretation of *W.Va.Code* 33–13–25(a) [1957]. That *Code* section states in pertinent part:

> No policy of life insurance shall be delivered or issued for delivery in this State if it contains a provision which excludes or restricts liability for death caused in a certain specified manner or occurring while the insured has a specified status, except that a policy may contain provisions excluding or restricting coverage as specified therein in the event of death under any one or more of the following circumstances: ... death within two years from the date of issue of the policy as a result of suicide, while sane or insane....

The statute does allow Security–Connecticut to withhold payment of the face value of a policy if the insured commits suicide "within two years from the date of issue of the policy."

■ We have articulated appropriate rules for construing insurance contracts in *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986).[1] The intent of these rules is to give an insurance contract the plain meaning that reasonable people would give it.[2] When reasonable people can differ about the meaning of an insurance contract, the contract is ambiguous, and all ambiguities will be resolved in favor of the insured.[3]

■ Security–Connecticut claims that reasonable people, after reading Mr. D'Annunzio's insurance policy, *could not* disagree about its meaning. In particular, Security–Connecticut claims the importance of the "issue date" is clear on the face of the insurance contract. We disagree. A reasonable person reading this agreement sees numerous references to the "policy date" (at least 10), to the "effective date" (at least 5), to the "monthly policy date" which is calculated from the policy date (at least 8), and to the "policy anniversary date" which is also calculated from the policy date (at least 11). On the other hand, the agreement only twice refers to the "issue date."

For the original policy, "effective date" of coverage under the policy is defined as "the policy date." For increases in coverage, the effective date is the next monthly policy day after the increase is approved. For any increases, contestability is limited

---

1. The four *Soliva* rules are:
   1. The contract should be read as a whole with all policy provisions given effect.... If the policy as a whole is unambiguous then the insured will not be allowed to create an ambiguity out of sections taken out of context;
   2. The policy language should be given its plain, ordinary meaning.... In no event should the plain language of the policy be twisted or distorted.... A doubt which would not be tolerated in other kinds of contracts will not be created merely because the contract is one of insurance ...;
   3. A policy should never be interpreted so as to create an absurd result, but instead should receive a reasonable interpretation, consistent with the intent of the parties ...;
   4. If, after applying the above rules, reasonably prudent and intelligent people could honestly differ as to the interpretation of the contract language, then an ambiguity will be said to exist.... Any ambiguity in an insurance contract will be interpreted against the insurer unless it would contravene the plain intent of the parties....

2. In other words, in the case before us, the question is not what a group of trained and experienced lawyers would conclude after a careful and meticulous reading and exegesis of the contract. Rather, the question is what a reasonable person·in Mr. D'Annunzio's position, having a gun in his right hand and the insurance policy in his left, would conclude.

3. *See, National Mutual Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987).

to the "effective date," but for the initial agreement Security–Connecticut wishes arbitrarily to select a different date. The monthly policy day is the date from which the accumulated cash value of the policy is calculated.[4] The policy anniversary date is the date from which borrowing against the policy is calculated. The insured is given a plethora of days and dates from which to choose and about which to be confused.

The importance of the policy date, however, is stressed over and over. The agreement states:

POLICY DATES, MONTHS AND ANNIVERSARIES: *The Policy Date shown on the Policy Data Page is important.* The date is used to calculate Planned Periodic Premium Dates, Policy Anniversaries, Policy Years and Policy Months. The first Policy Anniversary is one year after the Policy Date. The period between the Policy Date and the First Policy Anniversary, or from one Policy Anniversary to the next is called a Policy Year. A Policy Month begins on the same date in each calendar month as that specified in the Policy Date shown on the Data Page. [Emphasis added.]

The *only* references to the issue date, on the other hand, are in the sections that provide Security–Connecticut with the ability to contest the policy. *However, it is "the policy date" and not "the issue date" from which Security–Connecticut chose to collect its premiums.*[5]

*W.Va.Code*, 33–13–25(a) [1957] measures the two-year contestability period from the "issue date." But we can imagine only that when the Legislature enacted this statute, it did not contemplate an insurance policy with myriad dates for different purposes, particularly one early date from which premiums would be calculated and some later date, called the "issue date," from which the two year incontestability provision would be calculated. We understand the company's argument that the purpose of the November "policy date" was to give the insured the benefit of lower premiums and/or higher interest rates; nonetheless, that beneficent intent does not render the policy document less ambiguous or the harsh and inequitable result below less counter-intuitive. The legislature seems to have intended the contestability period to run from the date from which coverage is paid for. Security–Connecticut admits that it calculated Mr. D'Annunzio's premium from 28 November 1986 and this is the date a reasonable person would believe coverage and the contestability period began.

■ Furthermore, the equities overwhelmingly favor the beneficiary. Mr. D'Annunzio did not buy an insurance policy on Monday and a gun on Tuesday. He held a long-term policy that was already non-contestable with another insurance company, but changed his coverage to Security–Connecticut at the behest of Security–Connecticut's agent. He rolled over the cash value of his earlier policy directly to Security–Connecticut. Mr. D'Annunzio retained the same coverage over a long period, changing only the carrier of that coverage because of Security–Connecticut's good marketing. As we said in the second rule in *Soliva, supra,* note 1:

(e) is the accumulated value as of the preceding Monthly Policy Day.
(f) is all net premiums received since the preceding Monthly Policy Day.
(g) is the monthly deduction for the month following the preceding Monthly Policy Day.
The accumulated value on the Policy Date shall be the First Net Premium.

---

4. ACCUMULATED VALUE: On each Monthly Policy Day the accumulated value shall be calculated as (a), plus (b), minus (c), plus (d), where:
(a) is the accumulated value on the preceding Monthly Policy Date.
(b) is all net premiums received since the preceding Monthly Policy Day.
(c) is the monthly deduction for the month preceding the Monthly Policy Day.
(d) is the one month's interest on the result of item (a) less item (h), described below.
On any day other than a Monthly Policy Day, the accumulated value shall be calculated as (e), plus (f), minus (g), where:

5. We note Deep Throat's advice to Woodward and Bernstein during their Watergate investigation—"Follow the money."

A policy should never be interpreted so as to create an absurd result, but instead should receive a reasonable interpretation, consistent with the intent of the parties ...;

### III.

In order to avoid further litigation in this matter, we pronounce now from our review of the entire record that notwithstanding Mrs. D'Annunzio's recovery here, this has not been a case of "bad-faith" failure to settle on the part of the insurance company. However, after judgment is entered in favor of Mrs. D'Annunzio for the policy amount, interest and costs, Mrs. D'Annunzio may make appropriate motions under *Hayseeds v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986), for recovery of her attorney's fees. This is a case about first-party insurance, and when a person buys insurance, he buys coverage—not litigation.

For the foregoing reasons, the judgment of the Circuit Court of Harrison County is reversed, and this case is remanded for entry of judgment and for further proceedings consistent with this opinion.

Reversed and remanded with directions.