Butler, J.
INTRODUCTION
Plaintiff Joy Levitan, the widow of Fredric Levitan, has sued The Savings Bank Life Insurance Department of Massachusetts for life insurance benefits she claims are due her as a result of her husband’s death. Savings Bank, relying upon an exclusion in the policy purchased by Mr. Levitan, has maintained that it is not obliged to pay out any sums in excess of premiums paid because the insured committed suicide within two years of the “issue date” of the policy.
The case is now before the court on the defendant’s motion for summary judgment. The plaintiff parried with a claim that there was a genuine dispute as to a material fact — whether the death was indeed a suicide — but, acknowledging the weakness in that argument, cross-moves for summary judgment on the policy language. At issue in the policy language is the term “issue date.” Since a policy of insurance is a contract, its interpretation is a legal matter for the court to decide.
FACTUAL BACKGROUND
It is axiomatic that the victims of a suicide include the survivors. This case presents a painful insight into the horror of the act of suicide. Nevertheless, the litigation concerns the interpretation of a contract between the insured and the defendant.
On or about February 15, 1989, Fredric Levitan telephoned an insurance agent to secure additional life insurance coverage because he and his wife, Joy, were refinancing their house. The Levitans had two children, including a son, David. Joy and the two children were the named beneficiaries on the policy.
Mr. Levitan signed his application on February 15, 1989, and on February 22, 1989 sent his application and full payment for the annual premium — $257.30— to Savings Bank. The application contains the following language: “I agree that the insurance applied for shall not take effect until the first full premium is paid.” Drawing reasonable inferences most favorable to the plaintiff from the materials submitted, Mr. Levitan believed that he was required to send in the first premium with the application.[1] In any event, the agent with whom he dealt explained to Mr. Levitan that by sending in the premium with the application, there would be no delay in effectuating coverage once the application was approved. The application makes no reference to an “issue date.” Savings Bank accepted the application, began the process of a medical review and cashed the check.
On March 21, 1989, a paramedical examination, conducted by a nurse, was completed. The policy was approved on May 4, 1989.
The policy, in the face amount of $130,000, bearing an “Issue Date” of May 5, 1989, was issued to Mr. Levitan on May 5, 1989. The policy is a one-year renewable policy. The terms of the policy relevant to the inquiry presented in this case are as follows:
Section 1. Policy Fundamentals
Policy Renewal
At the end of each policy year, we’ll automatically renew the policy for another year. We won’t require new evidence of insurability. Premiums for the *336 renewal will be as shown in the premium schedule. The premium then due must be paid.
Issue Date
The issue date is shown on the Policy Face. Policy months, years and anniversaries are figured from this date.
Limited Benefit in Case of Suicide
If the insured, whether sane or insane, commits suicide within two years from the issue date, we will pay only a limited benefit. The benefit will be limited to the amount of premiums paid for this policy, less:
any amount owed us; and
any dividends we’ve paid in the form of cash or reduced premiums.
Section 2. Premium Payments
When to Pay Premiums
The first premium is due on the issue date. Premiums are then due annually on each policy anniversary.
While the policy does not define “issue date,” it is apparent from the clear language of the policy that it is that date entered on the face of the policy by the insurer, following application, approval and payment of the premium have occurred. A medical evaluation and/or examination is a condition precedent to the approval of the application. The application itself states that the insured agrees “that the insurance applied for shall not take effect until the first premium is paid and the policy delivered while each person to be insured is in good health.” (Emphasis added.)
The application completed by Fredric Levitan contained, on the reverse, Parts 2 and 3 for a “medical” evaluation. In addition to questions relating to employment and medical history, the form includes an authorization permitting the release of medical records and information to the insurer. The authorization was signed by Mr. Levitan, the “Proposed Insured.”
The underwriting process at Savings Bank is controlled by the state medical director. Savings Bank cannot issue a policy for life insurance unless it is approved by the state medical director. Because of Mr. Levitan’s age, the medical director wrote for an attending physician’s statement, which was received by Savings Bank on May 4. The next day the policy was issued and sent to Mr. Levitan.
On March 8, 1991, Mr. Levitan’s body was found lying on a blanket on the floor of his father-in-law’s closed garage. His wife’s parents were away in Florida. The keys were in the ignition, in the “on” position. Mr. Levitan’s head was on a pillow, positioned near the exhaust pipe of his automobile. A towel had been placed against the door leading from the garage into the house. Inside the house, in the bathroom, were open bottles of barbiturates. On the vanity counter were photographs of his family. On the steps to the Jacuzzi were pillows of the same design as found in the garage. Two envelopes containing letters, one addressed to Joy, and one addressed to his son, were found in the other family car which was also parked in the garage. To his wife, Mr. Levitan left a note expressing his sorrow, asking her forgiveness, and requesting a specific disposition of his remains.
The death certificate indicated that the time of injury was 2:00 a.m. It stated that the cause of death was carbon monoxide intoxication, the manner of death was suicide. An autopsy confirmed the cause of death as carbon monoxide poisoning, and confirmed the presence of barbiturates and morphine in his body.
At the time of his death, Mr. Levitan and his wife were experiencing marital problems and were seeing a marriage counsellor.
In May 1991, the plaintiff presented a claim for benefits due under the policy. On May 21, 1991, Savings Bank notified the plaintiff that she was not entitled to receive benefits because of the occurrence of death by suicide within two years of the “issue date.”
DISCUSSION
There is a presumption in law against suicide. Krantz v. John Hancock Mut. Life Ins. Co., 335 Mass 703, 711-12 (1957). A presumption stands until evidence is introduced to the contrary. Giligian v. New England Truck Co., 265 Mass. 51, 55 (1928). The introduction of prima facie evidence of suicide destroys the presumption against suicide. Krantz, supra at 712. Uncontradicted prima facie evidence compels the conclusion that the evidence is true. Chandler v. Prince, 217 Mass. 451, 454 (1914). The plaintiffs deposition indicates that she does not believe that her husband committed suicide; however, she presented no real challenge in the context of this motion to the overwhelming evidence that Mr. Levitan’s unfortunate death was a suicide.
Therefore, the outcome of the cross-motions for summary judgment turns upon the interpretation of “issue date.” The interpretation of a contract is a question of law, and therefore is particularly well-suited for disposition by summary judgment. Royal-Globe Ins. Co. v. Craven, 411 Mass. 629, 632 (1992); Kelleher v. American Mutual Ins. Co. of Boston, 32 Mass.App.Ct. 501, 503 (1992); Mills v. Prudential Ins. Co. of America, 1 Mass.App.Ct. 188 (1973).
The plaintiff realizes that unless the “issue date” occuixed on or before March 8, 1989, she is barred from recovery in excess of premiums paid by the suicide exclusion clause of the policy. She therefore takes the position that “issue date” is the date the premium is paid — here, February 22, 1989. She relies upon that sentence in Section 2 (Premium Payments) which provides, “The first premium is due on the issue date.” Such an interpretation would require the issuance and effect of the policy before medical screening, a result which defies common sense.
*337 The defendant concedes that neither the delivery date nor the approval date necessarily coincides with the “issue date.” Nevertheless, the issue date has significant contractual meaning: It marks the beginning of each policy year, and thereby marks the date by which the next year’s premium must be paid (with a 30-day “grace” period thereafter). Thus, although Mr. Levitan’s first premium payment was made on February 22, he was not obliged to pay the premium for the next year’s coverage until on or before May 5.
More importantly, “issue date” is the bright line for determining full or limited coverage when an insured’s death is caused by suicide.
The parties have cited no Massachusetts cases which directly address this point. The plaintiff relies upon the West Virginia case of D’Annunzio v. Security-Connecticut Life Ins. Co., 186W.Va. 39, 410 S.E.2d 275 (1991), which involved a similar, but not identical, fact pattern.[2] The D’Annunzio case, however, also involved a strikingly different contract of insurance, with language markedly less clear than this policy.
Despite the indescribable loss to the plaintiff occasioned by the death of her husband, the instant case can and must be resolved by a reasoned interpretation of the contract of insurance between Fredric Levitan and Savings Bank. The first principle of interpretation is that a contract, entered into without fraud or duress, must be enforced according to its terms. Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982); Willett v. Herrick, 258 Mass. 585, 595 (1927); Nelson v. Cambridge Mutual Life Ins. Co., 30 Mass.App.Ct. 671, 673 (1991). Where the terms are clear and unambiguous, they must be read according to their plain language. Nelson, supra, citing Cody, supra.
Applying these sound principles of contract law to this insurance policy, it is inescapable that the issue date is May 5, 1989. Because Mr. Levitan’s suicide occurred •within two years of that date, the insurance company complied lawfully with the terms of the contract by paying the premium, and no more.
ORDER
The defendant’s motion for summary judgment is ALLOWED. The plaintiffs cross motion for summary judgment is DENIED.
Judgment shall issue for the defendant, the Savings Bank Life Insurance Company of Massachusetts. It is hereby declared that the defendant has paid all sums due under Policy No. 19-054734 issued to Fredric Levitan on May 5, 1989.

 In fact, the premium payment was not required to be paid simultaneously with the submission of the application: however, agents were encouraged to obtain the premium payment at this time, ostensibly so the insured would avoid any delay in the issuance of the* policy following the medical examination.

 Significantly, in the D’Annunzio case, the insured was pressed by an agent of the defendant to relinquish an existing policy in another company to roll over the accrued cash into a new policy. The court’s language left no doubt that it was applying equitable considerations to the case.