# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**February 3, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**NEXT INSURANCE, INC.,**
**Defendant Below, Petitioner**

**v.)  No. 25-ICA-164**            (Cir. Ct. of Kanawha Cnty. Case No. CC-20-2023-C-988)

**TIFFANY MULLINS,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

Petitioner NEXT Insurance, Inc., ("NEXT") appeals the March 19, 2025, order of the Circuit Court of Kanawha County, which granted summary judgment in favor of Respondent, Tiffany Mullins. Ms. Mullins filed a response.[1] NEXT filed a reply. The issue on appeal is whether the circuit court erred in determining that the NEXT Insurance Commercial General Liability Policy at issue provides coverage for work performed by subcontractors acting on behalf of the insured.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds some error in the circuit court's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the circuit court's decision is reversed, in part, and this case is remanded to the circuit court for further proceedings consistent with this decision.

This case arises from a civil action filed by Ms. Mullins to recover insurance proceeds under a Commercial General Liability Policy ("CGL Policy") issued by NEXT to its insured Donnie Goodwin, the sole proprietor of DG Home Repair (collectively, "DG Home") under policy number NXTWYK7HTW-00-GL (the "Policy"). The effective dates of the Policy were March 4, 2023, to March 4, 2024.

Ms. Mullins alleges that Donnie Goodwin represented to her that he was a licensed contractor, and she hired DG Home to perform construction repairs on her flood-damaged home in Charleston, West Virginia. She contends that DG Home used subcontractors who performed the construction work in an unworkmanlike and defective manner, and that

---

[1] NEXT is represented by Trevor K. Taylor, Esq. Ms. Mullins is represented by Charles M. Love, IV, Esq.

1

Donnie Goodwin abandoned the job without performing the contracted tasks. She alleges that the poor workmanship requires corrective measures, which will cost more than $30,000 to remediate, and further contends that she overpaid DG Home more than $10,000 for work never performed.

During her deposition, Ms. Mullins testified that she and DG Home had two written contracts for work to be performed on her home: the first, for her living room, was for approximately $32,700; and the second, for the kitchen and bathroom, was for $36,000. She testified that she paid Donnie Goodwin over $70,000. Ms. Mullins also testified that most of the repair work was performed by men she identified as Donnie Goodwin's subcontractors, who included two men she named as Ethan Goodwin and Arlie Richards, and some number of unidentified plumbers. She testified that Ethan Goodwin and Mr. Richards worked at the direction of Donnie Goodwin until late March or early April 2023, when all work on her home stopped. Ms. Mullins claims that while some of the work was performed satisfactorily, other portions of the work were substandard.

Ms. Mullins filed her operative complaint in circuit court on January 12, 2024, alleging breach of contract by DG Home for failing to repair the home in a workmanlike manner and failing to complete the contracted repairs; alleging negligence/gross negligence/recklessness against DG Home and its subcontractors for breach of their duty to perform construction in a reasonable and prudent manner; and seeking a declaratory judgment in the form of "judicial construction of the subject [P]olicy, and specifically a determination as to whether or not the [Policy] prohibit[s] coverage for the liability of [DG Home] in this matter."

During the proceedings below, it was NEXT's position that the Policy provided no coverage arising from the performance of the contracts between DG Home and Ms. Mullins, and that the Policy precluded coverage for claims involving DG Home's work and/or the work of any "subcontractors" working directly or indirectly on DG Home's behalf. Based on the record before this Court, there is no evidence that Donnie Goodwin or DG Home Repair appeared or participated in the litigation below or sought to compel coverage under the Policy.

Arlie Richards was deposed and testified that he did not consider himself to be a subcontractor, as described by Ms. Mullins, but also did not consider himself to be an employee of DG Home. He testified that Donnie Goodwin called him up and told him he had some work for him, but that he initially declined because he thought taking the work would cause him to "lose [his] insurance and stuff." He claims that Donnie Goodwin said, "you don't have to worry about that, I'll pay you cash." Mr. Richards said he took the work, but he was "just a flunky getting paid — getting a payday." He testified that he performed drywall work and some framing and trim work at Ms. Mullins' home, as directed by Donnie Goodwin, using DG Home's tools and materials, and was paid $500 a week in cash. Mr. Richards explained that Donnie Goodwin hung the drywall, he did the taping and mudding

of the drywall, and then Ethan Goodwin (Donnie Goodwin's nephew) did the sanding. He stated that Donnie Goodwin inspected his work, and if it was not up to standard, Donnie Goodwin would "cuss like a sailor" to let him know he needed to fix it. Mr. Richards testified that he did not maintain his own CGL Policy, hold any licensure, or issue any invoices to Donnie Goodwin or Ms. Mullins.

Ethan Goodwin was not deposed, but Ms. Mullins obtained an affidavit with his signature dated October 8, 2024, in which he stated he performed construction work on her home between January 2023 and March 2023 with Arlie Richards. In the affidavit, Ethan Goodwin averred that he "relied upon the experience of Arlie Richards primarily in performing the work" but "DG Home Repair and Donnie Goodwin paid me in cash each week and did not deduct taxes or provide Workers' Compensation coverage for me." He stated he "was not employed by Donnie Goodwin or DG Home Repair at the time [he] performed construction work on the home" and that he "was a subcontractor on the Mullins home project."

The Policy contains a coverage form that provides CGL coverage on an "occurrence" basis.[2] The Policy's basic coverage form contains numerous exclusions, including a standard "Damage to Your Work" exclusion with a subcontractor exception (often referred to as "exclusion l"):

This insurance does not apply to:

\*\*\*

l. **Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The Policy also contains a lengthy schedule of policy forms and endorsements, which modify the standard coverage form. Relevant to this appeal are two such endorsements: the first is form CG 22 94 10 01, titled "Exclusion – Damage to Work Performed by Subcontractors on Your Behalf" (hereinafter "Subcontractor Exclusion"). This Subcontractor Exclusion endorsement eliminates the subcontractor exception to the "Damage to Your Work" exclusion entirely and operates to exclude property damage to any part of "your work," even if it was performed by a subcontractor.

---

[2] An "occurrence" is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The second pertinent form is form NXUS-GL-2074.3-0322, titled "Contractor/Sub-Contractor Insurance Requirements" (hereinafter "Subcontractor Requirements"). It states:

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

Notwithstanding any other provision in this Coverage Part:

A. Coverage under this Coverage Part does not apply to an "occurrence" arising out of a sub-contractor's work unless such sub-contractor:
1. Is operating pursuant to a written agreement between you and the contractor or sub-contractor; and,
2. Provided you with a valid certificate of insurance listing you as an additional insured on their commercial general liability insurance policy with limits equal to or exceeding the limits provided by this policy.

B. With respect to an "occurrence" arising out of a sub-contractor's work and such sub-contractor:
1. Is operating pursuant to a written agreement between you and the contractor or sub-contractor; and
2. Provided you with a valid certificate of insurance listing you as an additional insured on their commercial general liability insurance policy with limits equal to or exceeding the limits provided by this policy.
[A]ny insurance provided by this Coverage Part shall be excess over any insurance provided to you through or by the sub-contractor.

All other terms and conditions of the policy remain unchanged.

On November 4, 2024, Ms. Mullins and NEXT filed cross-motions for summary judgment on the issue of insurance coverage, for which the court heard arguments on December 17, 2024. On March 19, 2025, the circuit court issued an order that contained the following findings of fact, in relevant part:

1. [Ms. Mullins] was injured by defective workmanship and property damage to her home defectively repaired and renovated by subcontractors of Donnie Goodwin.
2. The negligent and defective repairs were performed on [Ms. Mullins'] property from January to March of 2023. The project was performed to remediate flood damage in living and dining rooms, the kitchen, and the sole bathroom of the home.
3. Mr. Goodwin utilized subcontractors who performed the construction work in an unworkmanlike and defective manner.

4

4. The Court finds that based upon the evidence submitted, a plumber, Ethan Goodwin, and Arlie Richards were subcontractors.

The circuit court's order concluded as a matter of law that the Policy did not provide coverage for the breach of contract by Donnie Goodwin and/or DG Home Repair alleged under Count I of the complaint,[3] but concluded that the Policy did provide coverage for any work performed by subcontractors. The court reasoned that the Policy had a "damage to your work" exclusion with a subcontractor exception, followed by a subsequent endorsement that removed the subcontractor exception in a way that the court stated "gives coverage and then subsequently takes it away which is the basis that the Court in *Cherrington v. Erie*, 745 S.E.2d 508 (W. Va. 2014) used to find coverage." The circuit court noted the admonition from the *Cherrington* decision that "[a]n insurance policy should never be interpreted so as to create an absurd result, but instead should receive a reasonable interpretation, consistent with the intent of the parties." *Id*. at 482, 745 S.E.2d at 520 (quoting Syl. Pt. 2, *D'Annunzio v. Security-Connecticut Life Ins. Co.*, 186 W. Va. 39, 410 S.E.2d 275 (1991)). The court further found that the Policy language created "a reasonable expectation of insurance by the insured if an occurrence arises out of a subcontractor's work." Accordingly, the court granted Ms. Mullins' motion for summary judgment and found "that there is coverage under the CGL policy at issue here for the property damage caused to [Ms. Mullins'] home caused by work performed by subcontractors." It is from this ruling that NEXT appeals.

We apply a de novo standard of review to the circuit court's entry of summary judgment. *Moorhead v. W. Va. Army Nat'l Guard*, 248 W. Va. 592, 595, 889 S.E.2d 314, 317 (Ct. App. 2023), *aff'd*, 251 W. Va. 600, 915 S.E.2d 378 (2025). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." W. Va. R. Civ. P. 56(a), in part; *see also* Syl. Pt. 2, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). "[A] circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. . . . [and] must provide clear notice to all parties and the reviewing court as to the rationale applied in granting or denying summary judgment." *Fayette Cnty. Nat'l Bank v. Lilly*, 199 W. Va. 349, 354, 484 S.E.2d 232, 237 (1997), *overruled on other grounds by Sostaric v. Marshall*, 234 W. Va. 449, 766 S.E.2d 396 (2014).

A de novo standard of review is also applied to the lower court's interpretation of an insurance policy. "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement [sic], shall be reviewed *de novo* on appeal." Syl. Pt. 2*, Riffe v. Home Finders Assocs., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999). "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of

---

[3] In so doing, the court granted, in part, NEXT's motion for summary judgment. NEXT does not appeal this ruling.

law." Syl. Pt. 1, *Tennant v. Smallwood*, 211 W. Va. 703, 568 S.E.2d 10 (2002). With these standards in mind, we turn to the issues on appeal.

NEXT raises three assignments of error in the circuit court's order. First, NEXT argues that the circuit court erred in its interpretation of the Policy language by failing to apply the Policy's Subcontractor Requirements form as written, which would have precluded coverage because none of the alleged subcontractors complied with its terms. Second, NEXT alleges the court erred in its application of the *Cherrington* decision to the Policy, asserting that the insurance policy at issue in *Cherrington* contained contradictory provisions that simply are not present in this matter. And finally, NEXT asserts that the court erred by concluding that Ms. Mullins was injured by work performed by subcontractors of DG Home because Ms. Mullins failed to establish that any of the individuals who performed work at her home were subcontractors.

Turning to the first assignment of error, NEXT contends that the court erred by ignoring the plain, unambiguous language of the Subcontractor Requirements form, and instead interpreted the form to extend coverage to an "occurrence" arising from a subcontractor's work, despite making no finding that the form was ambiguous such that it was subject to judicial construction. We agree. "Language in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W. Va. 430, 345 S.E.2d 33 (1986). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl. Pt. 3, *Witt v. Sutton,* 229 W. Va. 26, 725 S.E.2d 195 (2011) (citation omitted). The Policy's Subcontractor Requirements form plainly states that it modifies insurance provided under the CGL Coverage Part, and "[n]otwithstanding any other provision in this Coverage Part[,]" coverage under this form does not apply to an "occurrence" arising out of a subcontractor's work unless two conditions precedent are satisfied. Those conditions are that the subcontractor 1) is operating pursuant to a written agreement between the insured and the subcontractor; and 2) provided the insured with a valid certificate of insurance listing the insured as an additional insured on their CGL Policy with limits equal to or exceeding the limits under the Policy. If both of those conditions are met, then any insurance provided by this Coverage Part "shall be excess over any insurance provided" to the insured through or by the subcontractor.

Importantly, there is no finding in the court's order that this language is ambiguous or subject to judicial interpretation. Instead, the order contains only short, conclusory statements without any meaningful analysis, and summarily concludes that "under these circumstances there is a reasonable expectation of insurance by the insured if an occurrence arises out of a subcontractor's work." We find no ambiguity in the language of the Policy's Subcontractor Requirements form and, therefore, no justification for the circuit court to consider or examine the reasonable expectations of the insured. *See Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 742, 356 S.E.2d 488, 496 (1987) (explaining that

6

the doctrine of reasonable expectations is limited to instances where policy language is ambiguous.). Furthermore, we find that the court erred in applying the principles of judicial construction to the Policy where it was not ambiguous.

We turn next to petitioner's second assignment of error, which asserts that the court misapprehended the Policy's Subcontractor Exclusion form and erred in its application of *Cherrington*. In paragraph 15 of the order on appeal, the circuit court recites the language from the standard "Damage to Your Work" exclusion l. with the subcontractor exception, then summarily states that "there is a subsequent endorsement . . . that takes away the[]exception for coverage for subcontractors but then states that subcontractors' property[]damage would be covered if the subcontractor became an additional insured under the[]contract. . ."[4] Paragraph 16 concludes, "[t]he policy gives coverage and then subsequently takes it away which is the basis that the Court in *Cherrington v. Erie*, 745 S.E.2d 508 (W. Va. 2014) used to find coverage."

NEXT argues that the court erred by misconstruing the holding of *Cherrington* as it applies to the reading of the Policy language and whether it covers subcontractors. NEXT contends that while *Cherrington* interpreted a comparable exclusion in a CGL policy with a similar subcontractor exception, the insurance policy in the *Cherrington* case is distinguishable from the Policy at issue herein. We agree and find merit in this distinction.

In *Cherrington*, the court found that the language of two operative exclusions in the policy at issue were directly contradictory and could not rationally be read together according to their plain language. There, the first exclusion (identified as exclusion l.) excluded coverage for property damage to "your work" except if the work "was performed on your behalf by a subcontractor" and the subsequent exclusion (identified as exclusion m.) explicitly precluded coverage for any shortcoming in "your work," which was defined to include any work performed "on your behalf." Therefore, the *Cherrington* decision found that exclusion m., on its face, barred coverage for the very same work of subcontractors that exclusion l. specifically found to be covered. *Cherrington* concluded, in pertinent part, "we do not subscribe to an insurance policy construction that lends itself to the mantra: what the policy giveth in one exclusion, the policy then taketh away in the very next exclusion." 231 W. Va. 470, 488, 745 S.E.2d 508, 526.

Here, however, the operative exclusion l. is found in the Policy's Subcontractor Exclusion form, which contains no subcontractor exception. It is an endorsement to the Policy and conspicuously modifies and replaces the standard exclusion l. and its subcontractor exception. Accordingly, we are not tasked with reading the Subcontractor

---

[4] It is evident that the order conflates the Policy's Subcontractor Exclusion form with the Subcontractor Requirements form, when it states that "a subsequent endorsement" takes away an exception to coverage "but then" includes a statement of future conditional coverage for property damage.

7

Exclusion form in tandem with reading the exclusion without the subcontractor exception, as no such exception exists within the Policy. Thus, we find that the Policy does not create the sort of "absurd result" that *Cherrington* prohibits. We need only consider the plain, unambiguous language of the Subcontractor Exclusion form as it is written. Likewise, we find that the plain, unambiguous language of the Subcontractor Requirements form does not run afoul of *Cherrington*, as neither of these endorsements work together to grant coverage in one operative provision and then exclude coverage in the other operative provision.[5] Therefore, we conclude these are the Policy forms that must be considered when determining coverage for subcontractors, not the obsolete language of the standard exclusion l. which was present in *Cherrington*.

Thus, we conclude that, by their own terms, the Policy's Subcontractor Exclusion form and Subcontractor Requirements form operate to preclude coverage under the facts of this case for work performed by DG Home's subcontractors, if any.[6] Upon review of the record, there is no evidence that anyone who performed work on Ms. Mullins' home, including Arlie Richards or Ethan Goodwin, satisfied the conditions precedent to coverage under the Subcontractor Requirements form's provision. As a result, coverage is not triggered under the Policy.

Accordingly, we reverse the portion of the March 19, 2025, order finding coverage under the Policy for any work performed by subcontractors and remand this matter to the circuit court for entry of an order granting summary judgment to NEXT on this issue. We do not disturb the circuit court's conclusion of law regarding the lack of coverage for breach of contract, as that ruling was not appealed.

Reversed, in part, and Remanded.

---

[5] In her respondent's brief, Ms. Mullins questions whether the endorsements, including the Subcontractor Exclusion form, were part of the Policy. However, Ms. Mullins did not appeal or raise cross-assignments of error challenging the validity of these endorsements, so we decline to address these arguments. *See Salem Int'l Univ., LLC v. Bates*, 238 W. Va. 229, 234, 793 S.E.2d 879, 884 (2016) (refusing to consider respondents' assertions that the agreement at issue was not valid where they failed to raise a cross-assignment of error raising that argument).

[6] For its final assignment of error, NEXT argues that the court erred in concluding that the workers at Ms. Mullins' home were subcontractors. However, as we have already established a sufficient basis for reversal of the circuit court's decision, we need not address this assignment of error.

**ISSUED:** February 3, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White